Louis Bongiorno, Plaintiff, *v.* United States Trucking Cor-
poration, Defendant.

Supreme Court, New York County, April 11, 1937.

*Abraham M. Fisch,* for the plaintiff.

*Frederick H. Rees,* for the defendant.

Lockwood, J. On April 20, 1935, the plaintiff, a longshoreman, sustained a broken ankle when a truck owned by the defendant was negligently backed into a group of workers on Pier 16, East river. Plaintiff was removed in an ambulance to Broad Street Hospital, where he remained for eleven days. He was then taken home and has since been unable to work, and it is doubtful that he will be able to do the same kind of work again. He is unmarried and the main support of a blind widowed mother. Through no fault of his own this man has been compelled to seek help from the Emergency Relief Bureau.

The first day in the hospital he signed a fifty per cent agreement for a lawyer who regularly represents his union. A few days later, at the suggestion of a druggist, the injured man's brother took another lawyer to the hospital. The brother says they ascended the rear stairway to avoid the hospital superintendent. However, papers were signed for the second lawyer to give him fifty per cent. He immediately served a summons. After investigating the case the first attorney retained served a summons and

complaint. Plaintiff says he is a longshoreman not familiar with papers, and anyway he was quite ill the first few days and did not clearly understand what he signed. However, he had two lawyers, each to get fifty per cent, and then in the hospital he executed an assignment for a doctor and another one for the hospital.

The dispute between the lawyers was settled on the basis of the injured man paying both. The fee of the retiring lawyers was fixed by the court.

The case was sent to this court for trial. The main question is one of liability, the defendant claiming that the truck was backed up by a person not employed by it and without authority from it. A settlement for $3,500 was arranged. Plaintiff says he understood he was to receive $2,000 clear. This court brought about the settlement and to the court plaintiff now brings his troubles over the division of the settlement.

The following claims were made: Broad Street Hospital, $112.10; the doctor who treated him at the hospital and later at home, $257; the lawyer who was retained last but served the first summons, $350; the lawyer who was retained first but served the last summons and the first complaint, $1,750; advanced to plaintiff, $70; total, $2,539.10, deducted from $3,500, leaves $960.90 for the injured man.

Talking to some who here seek fees, one has to stop and wonder if holders of bills appreciate who received the injury and that the man who suffered the broken ankle and who has the permanent injury, and whose ability to work and earn is thus limited, is the one for whose supposed benefit the settlement is being made.

After much effort, the following adjustments were arrived at; all payments are in full settlement of the respective claims: The doctor, $175; Broad Street Hospital, $66.10; the second attorney retained who afterwards retired from the case, $250; the first attorney retained who represented plaintiff in the settlement negotiations and who prepared the case for trial, $1,000; total, $1,491.10, which deducted from the $3,500 leaves $2,008.90, which is to be paid to the plaintiff without any deduction whatever. From this amount plaintiff will pay back as agreed the $70 loaned to him to purchase winter clothing.

Apparently some of the attorneys here resented the participation of the court in the adjustment of these claims, taking the position that the man was over the age of twenty-one and they held his signed agreements. Further, that after the court brought about the settlement the court's work was ended. However, this man was trained as a longshoreman, not trained in business. He signed all these papers within a few hours or days after he was taken to a hospital, says he neither read nor understood them,

and that he agreed to the settlement with the express understanding and assurance that he would get "$2,000 clear," and that he explained he had to go on relief, and that although unmarried was the main support of a widowed mother, who is blind. Under these circumstances it was clearly the duty of the court to step in before this money was paid out and to protect this injured man.

The court thanks the superintendent of the Broad Street Hospital and the attorney for the Longshoremen's Union for their co-operation in the making of this adjustment.